**Morris    Rosenston,    Appellee,    v.    Ben    Rosenston, Appellant.** .

**Gen. No. 28,006.**

1. APPEAL AND ERROR—*conclusiveness of verdict based on conflicting evidence.* A judgment for plaintiff suing for money had and received upon a special promise to repay the same upon demand, based upon a verdict for plaintiff, will not be disturbed on appeal where supported by the evidence, which is in hopeless conflict.

2. ACCOUNTS STATED—*giving check for amount claimed due as account stated.* An account stated is established by evidence that plaintiff gave a substantial portion of his earnings over a con-

siderable period of time to his father upon the latter's agreement that upon the happening of a specific event the father would repay to plaintiff a sufficient sum therefrom to enable him to start in business, and that upon the happening of such event the father gave plaintiff a check stating, "Here is your money * * * hold the check until you need it and then present it for payment," as against the father's testimony that the check was intended as a gift which he later revoked by stopping payment on the check.

Appeal by defendant from the Municipal Court of Chicago; the Hon. DANIEL P. TRUDE, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1922. Affirmed. Opinion filed June 26, 1923. Rehearing denied July 7, 1923.

DECKER & GOLDEN, for appellant; ALVIN E. STEIN, of counsel.

GEORGE J. DREISKE, for appellee; WEST & ECKHART and WILLIAM L. BOURLAND, of counsel.

MR. JUSTICE FITCH delivered the opinion of the court.

Appellee recovered a judgment in the municipal court of Chicago for $1,000 against his father, Ben Rosenston, appellant. An opinion was heretofore written reversing that judgment with a finding of facts. A petition for rehearing was allowed and upon more mature consideration of the facts in the light of the further contentions of counsel we have concluded that our former opinion was based upon a misconception of certain portions of the evidence.

The statement of claim alleged in substance that between January 5, 1918, and June 11, 1920, plaintiff paid to defendant all the salary of the plaintiff, after deducting his car fare, lunch money and incidental expenses, and also paid to defendant certain other sums of money, which the defendant received from the

plaintiff upon his special promise to repay to the plaintiff, upon his graduation from law college, such part of the money paid to defendant as would be necessary to give plaintiff the proper financial start; that the plaintiff graduated on June 11, 1920, and, though often requested, defendant has refused to pay the same or any part thereof. Also, that on June 11, 1920, defendant was indebted to the plaintiff, upon an account stated, in the sum of $1,000, which the defendant refused to pay. Defendant's affidavit of merits denied the alleged promise, denied the receipt by him of said moneys, and denied any account stated between the parties. There was a jury trial resulting in a verdict for the plaintiff for $1,000, upon which judgment was rendered.

It appears from the evidence that the defendant is the father of five children, of whom the oldest is the plaintiff, who became of age on January 5, 1918. At that time he was employed at a salary of $25 a week, and was also attending an evening law school. He testified that about that time he had a conversation with his father in which he stated, in substance, that he would pay board at home and "save his earnings so as to have something to start out with" when he finished school; that his father replied: "It isn't necessary, you can just go on as you have been, leaving your money at the house; then when you finish school, I will give you a start and open up your office"; that his father told him to give his money to his mother, and that he accordingly gave her all his wages, except about ten dollars a week, which he retained for his own expenses, from January 5, 1918, to March 21, 1920, when his mother died; that thereafter, until June 11, 1920, he paid the money to his sister, who was taking care of the house; that on June 11, 1920, he graduated from law school; that his salary was increased during this period, first to $30, and then to $35 a week; that he also paid to his father

certain extra commissions earned by him during the same period, amounting to $319.83, and also turned over to him a Liberty bond for $50. The father denied that any such arrangement was made, but admitted that during the period mentioned his son did pay towards the family expenses $10 or $15 a week, and also admitted that he received the Liberty bond and the commissions above mentioned, but testified that he paid out for his son's clothing, tuition, books, lodge membership and dues, premiums on life insurance, and the like, as much money as he received. The son did not deny that his father paid for his clothing, tuition, books, etc., during this period. The father gave no definite figure as to the amounts so paid by him for his son's benefit, except in a few instances, such as the amounts paid for lodge membership and dues for premiums on life insurance.

It further appears that on June 11, 1920, when the son graduated from the law school, his father handed him a check for $1,000. Plaintiff testified that his father said at that time: "Morris, here is your money, but, inasmuch as you don't need it now, just hold the check until you do need it and then present it for payment." The father testified that he said at that time: "Morris, here is your graduation present. You don't need to cash it until you get the bar examination. When you get the bar examination you will have this for a start to open an office."

Some time in the fall of 1920, trouble arose over the fact that defendant signified his intention of bringing a second wife into the family. The son told his father that he intended to cash the check for $1,000, and leave the house, whereupon his father stopped payment of the check. Thereafter the trouble between them increased until the father and son nearly came to blows and the family separated, Morris taking with him the other children. Not long' thereafter defendant was brought before the court of

domestic relations and required to pay for the support of the minor children.

From this recital of the evidence it will appear that upon the cause of action stated in the first part of plaintiff's statement of claim the evidence was in hopeless conflict and upon our further examination of the record we have concluded that the jury, who saw and heard the witnesses, were better able than we are to determine whether the plaintiff or the defendant was telling the truth as to the alleged promise. Upon the second cause of action set up in the statement of claim, viz., that there was an account stated, the testimony of the plaintiff as to what was said when the check was given is corroborated by two other witnesses, his sister and a friend who was present at the time the check was delivered and heard what the father then said. The defendant claims that this check was intended as a gift, which he revoked when he stopped payment on the check; but the testimony of three witnesses, including the plaintiff, is to the effect that the check was not a gift but was intended as a settlement of the account between the father and son.

In 1 Corpus Juris 690, it is said: "A promissory note, duebill, or I O U, being an admission of a certain sum due, is prima facie evidence of account stated. So is an acceptance for a given sum, or a bill of exchange drawn by the debtor in favor of the creditor, *or any other instrument evidencing a past indebtedness.* * * * Where such an evidence of indebtedness is given, an action may be maintained upon the account stated, and the evidence of indebtedness is admissible to prove the stating of the account." The rule in this State is perhaps not as broad as the text quoted, but in *Rosencrantz v. Mason,* 85 Ill. 262, it is said: "While, as was held in *Ankeny v. Pierce,* Breese 226, and *Crabtree v. Rowand,* 33 Ill. 421, the

giving of a note, of itself, *unexplained,* is not evidence of a settlement of all demands between the parties to such an instrument, it is, as there said, evidence for the consideration of the jury, and is to be weighed in the light of the surrounding circumstances''; and, in that case, such evidence was considered as corroborating the testimony of the plaintiff to the effect that there was a settlement and that the note was given for the balance then found to be due. In *Wheelock v. Berkeley,* 138 Ill. 153, the rule in this State is stated as follows: ''The giving of a note, unexplained, is not *conclusive* evidence of a settlement of all the demands between the parties to such an instrument, but the question of the intent of the parties in such case is one of fact, to be determined by the jury from all the evidence relating to the transaction.'' In view of these authorities and of the evidence on behalf of the plaintiff in the present case, we think the jury were justified in finding that the giving of the $1,000 check by the defendant to the plaintiff under the circumstances above related constituted an account stated between the parties.

For the reasons hereinabove stated, the judgment of the municipal court is affirmed.

*Affirmed.*

GRIDLEY, P. J., and BARNES, J., concur.