JOHN KERR ET AL.

v.

PERRY HODGE.

*Master and Servant—Negligence of Mine Owner—Failure to Comply with Secs. 14 and 16 of Act of June 16, 1887—Props—Witnesses—Credibility of—Evidence—Instructions.*

1. The credit of a witness may be impeached by proof that he has made statements out of court, contrary to what he testifies at a given trial.

2. Such proof should be permitted to go to the jury, and they should be told to consider it in determining what credit and force shall be given a witness under such circumstances; but they should not be instructed that they can rightfully disregard the entire testimony of a witness for that reason unless corroborated.

[Opinion filed June 12, 1891.]

APPEAL from the Circuit Court of Schuyler County; the Hon. J. C. BAGBY, Judge, presiding.

Kerr v. Hodge.

Messrs. W. L. VANDEVENTER, S. B. MONTGOMERY and P. E. MANN, for appellants.

A party is entitled to have the law accurately announced in all the instructions.   C., B. & Q. Ry. v. Payne, 49 Ill. 499; Ill. Cent. Ry. Co. v. Maffit, 67 Ill. 431; Camp Point Mfg. Co. v. Ballou, 71 Ill. 417; Railroad Company v. Harwood, 80 Ill. 88.

Especially is this the law where the evidence is conflicting. Town of Geneva v. Peterson, 21 Ill. App. 458, and cases there cited; Keys v. Fuller, 9 Ill. App. 530; Goodkind v. Rogan, 8 Ill. App. 416; Loman v. Best, 30 Ill. App. 323; King v. Barnes, 30 Ill. App. 339; Holloway v. Johnson, 129 Ill. 367; Shaw v. The People, 81 Ill. 150; Stone & Lime Co. v. City of Kankakee, 128 Ill. 173.

The first instruction given for the plaintiff was clearly erroneous.   It assumes that the defendants wilfully failed to furnish props or cap-pieces.   The conclusion of the instruction contains a pointed intimation from the court that there had been a "wilful failure" on the part of the defendants. Any assumption or intimation from the court as to a material, controverted fact is always prejudicial error.   Star & Crescent Milling Co. v. Thomas, 27 Ill. App. 141; C. & N. W. Ry. Co. v. Moranda, 108 Ill. 576; Chambers v. The People, 105 Ill. 417; Tascott v. Grace, 12 Ill. App. 639; Ashlock v. Linder, 50 Ill. 169; Chichester v. Whiteleather, 51 Ill. 259; Town of Evans v. Dickey, 117 Ill. 291; Village of Warren v. Wright, 103 Ill. 299; Coon v. The People, 99 Ill. 368; C., B. & Q. Ry. Co. v. Dickson, 88 Ill. 437; 1 Thomp. on Tr., Sec. 1039; Sigsworth v. McIntyre, 18 Ill. 126; C. & E. I. Co. v. O'Connor, 119 Ill. 598; C., B. & Q. Ry. v. Warner, 123 Ill. 49; Ch., St. L. & P. Ry. Co. v. Hutchinson, 120 Ill. 589; Fortune v. Jones, 30 Ill. App. 116.

The second of plaintiff's instructions is erroneous because it also contains a clear but covert intimation from the court that defendants were guilty of a "wilful failure."

See authorities cited at paragraph No. 2, *supra*.  Especially is this instruction erroneous for predicating liability of a failure to supply cap-pieces when there is not one particle of evidence in the record that any demand was ever made for or

a refusal to supply cap-pieces. Instructions must be based on evidence. Ch., R. I. & P. Ry. v. Felton, 125 Ill. 458; Alexander v. Mt. Sterling, 71 Ill. 366; Bullock v. Narrott, 49 Ill. 62; Ry. Co. v. Lewis, 109 Ill. 122; Railroad Company v. Bragonier, 119 Ill. 53; I. C. Ry. Co. v. Benton, 69 Ill. 175; Snow v. Wiggin, 19 Ill. App. 542; Roberts v. Carter, 31 Ill. App. 142; Lutterell v. Caldwell, 31· Ill. App. 30; Price v. Hay 29 Ill. App. 552; Star Milling Co. v. Thomas, 27 Ill. App. 141, and cases cited; Sterling v. Merrill, 124 Ill. 522.

This instruction contains a covert and ingenious intimation to the jury that defendants were guilty of a wilful violation of duty. This is unfair and unwarrantable. Goodkind v. Rogan, 8 Ill. App. 416.

In C., B. & Q. R. Co. v. Warner, 123 Ill. 49, the Supreme Court say: " It is, strictly speaking, never within the province of the court to tell the jury that an ultimate fact is proven from the existence of given, evidentiary facts." There was a clear-cut issue of fact made by the pleadings as to plaintiff's employment, and contested as a fact all the way through the trial, but the court abandoning that issue, changed the name of the mooted question and made short work of the matter by deciding the very fact as a pure question of law. As further condemnatory of this vicious instruction, see Town of Evans v. Dickey, 117 Ill. 292; Chichester v. Whiteleather, 51 Ill. 259; Tascott v. Grace, 12 Ill. App. 639; Cicotte v. St. Anne's Church, 60 Mich. 559; C. & E. I. R. R. Co. v. O'Connor, 119 Ill. 588; Village of Warren v. Wright, 103 Ill. 299; Myers v. I. & St. L. Ry. Co., 113 Ill. 386; City of Aurora v. Pennington, 92 Ill. 564; Coon v. The People, 99 Ill. 368; Chicago & N. W. Ry. Co. v. Moranda, 108 Ill. 576; Chambers v. The People, 105 Ill. 417; Wilson v. Bauman, 80 Ill. 493; Olsen v. Upsahl, 69 Ill. 273.

Messrs. E. J. Pemberton and Prentiss & Baily, for appellee.

The first, second and ninth instructions, they say, assume or intimate that the defendants " wilfully failed," or were guilty of a wilful violation of duty, etc., and counsel having made

this assertion cite a "cartload" of authorities to show that any assumption or intimation from the court is always prejudicial error. Upon an examination of these instructions it is at once apparent that neither of them is justly amenable to the charge made. "Such wilful failure" used in the latter part of the first instruction plainly refers right back to a former part of the instruction and could not mislead any man of ordinary understanding. There might possibly have been a time when the average jury might have been unable to understand plain English, but that time has passed in this part of Illinois. But if, by any possibility, any of the jury should discover an intimation from the court as to whether any fact in controversy did or did not exist or had been proven, the twelfth instruction given for appellants flatly and pointedly disabuses their minds of any such idea. Lawrence v. Hagerman, 56 Ill. 68.

The fourth instruction given for appellee is charged with being palpably erroneous because they say the court usurped "the province of the jury by the specious attempt to metamorphose a question of fact into a question of law." We think counsel wholly fail to catch the import of that instruction. In effect it simply construes the meaning of the word "employed," as used in the enacting clause and elsewhere in the statute. The word evidently is not used in the sense of hired to work, but in the sense of engaged. Persons lawfully there and lawfully doing anything therein, whether hired or not, would be "employed" in the mine within the meaning of the statute. And if any such person while so "employed" in the mine should be injured by reason of any wilful violation of any of the provisions of the statute by the owner or operator of the mines, such owner or operator would be liable in damages. This instruction might possibly have been unnecessary, because we think it wholly immaterial whether Perry Hodge was working there at all or not. If he was lawfully there with the consent and knowledge of the Kerrs, that was enough. But appellant's counsel were endeavoring, as was apparent in their examination of John Kerr, and in fact all through the case, to make it appear that because Perry Hodge

had not been by regular contract hired to mine coal, that the Kerrs could not be made liable in any event for any injury received by him while in the mine. For this reason this instruction was asked. It is much more favorable to appellants than they were entitled to, but they can't be heard to complain of this.

Complaint is made of the eighth instruction for appellee. That is certainly the law as given. City of Chicago v. Keefe, Adm'r, 114 Ill. 222; Thurber v. Railroad Co., 60 N. Y. 326.

CONGER, P. J. This was an action on the case brought by appellee against appellants under Secs. 14 and 16 of an act approved June 16, 1887. Session Laws of 1887, page 235.

Sec. 16 is as follows: " The owners, agent or operator of every coal mine shall keep a supply of timber constantly on hand, of sufficient length and dimensions to be used as props and cap-pieces, and shall deliver the same as required, with the miner's empty car, so that the workmen may at all times be able to properly secure said workings for their own safety."

The declaration alleged a failure on the part of appellants to perform this duty, by reason of which appellee was injured; and upon a plea of not guilty, trial was had resulting in a verdict and judgment for appellee for $850.

The question whether appellants had supplied props and cap-pieces in accordance with the spirit of the law, was one of the vital questions in the case.

Upon this question, especially, the evidence of both the appellants was all important, and a strong effort was made upon the trial, by appellee, to break down their credibility before the jury, by showing that they had made statements on former trials inconsistent with their statements made on the present trial. It was therefore of the utmost importance that the jury should be correctly instructed upon this question, so that they might determine, under the rules of law, what weight and credence to give to the various witnesses. Under these circumstances the court gave to the jury, on behalf of appellee, the following instruction:.

16.    " The court instructs the jury that one of the methods

of impeaching a witness is to show by competent evidence that such witness has made a statement or statements out of court, or in court at another time, contrary to, or different from his testimony in the case in which he testifies as a witness in some matter material to the issue in the case on trial; and in this case, if you believe from the evidence that any witness has been successfully impeached, you have a right to disregard the entire testimony of such witness, except in so far as his testimony may be corroborated by other and credible evidence in the case."

We have no doubt that the jury would understand this instruction to mean that if any witness had been impeached in the particular manner pointed out in the first part of the instruction, then they were at liberty to disregard the entire testimony of such witness, except, etc., in so far as corroborated.

Appellee insists that this instruction is correct, and refers to Greenleaf on Evidence, Sec. 462, where it is said : " The credit of a witness may also be impeached by proof that he has made statements out of court, contrary to what he has testified at the trial." Appellee also refers to several cases in the Supreme Court, where the same general rule is laid down.

The above rule is sound, for it probably always affects the veracity or the memory of a witness to prove former contradictory statements. Craig v. Rohrer, 63 Ill. 325.

Hence it is always proper to permit such proof to go to the jury and to tell them to consider it in determining what credit and force shall be given to a witness under such circumstances. But this instruction tells the jury that if a witness has made previous statements contrary to or different from his testimony on the witness stand, in a material matter, the entire evidence of such witness is to be disregarded, except in so far as it may be corroborated by other credible evidence.

Under this instruction the jury would have no right to consider whether the former statements were made inadvertently or under an honest mistake as to the facts; but must, under such circumstances, sweep his testimony aside the same

as though they were to believe that the witness had wilfully and intentionally committed perjury. This is not the law.

The jury might have been told that contradictory statements should be considered by them in determining the weight and credit to be given to any witness, but they should not have been told that they could rightfully disregard the entire testimony of a witness for that reason, unless such witness makes them wilfully, or that the false statements must be knowingly made. McClure v. Williams, 65 Ill. 390; Pollard v. The People, 69 Ill. 148; Linck v. Whipple, 31 App. 155.

The seventeenth instruction given appellee is as follows:

17. "The court instructs the jury that if you believe from the evidence in this case that any witness has wilfully testified falsely to any matter, material to the issue in the case, you have the right to wholly disregard the testimony of such witness, except in so far as such witness may be corroborated by other credible evidence in the case."

This instruction does not, in our opinion, cure or avoid the vice of the sixteenth. The jury would naturally conclude that they referred to different questions, and while the seventeenth is good law, its probable effect upon the jury would be to make the sixteenth more dangerous and vicious than it would have been alone.

The jury might reasonably conclude that as the seventeenth required wilful perjury on the part of a witness to discredit him entirely, the sixteenth did not, but only that contradictory statements upon material questions should be shown.

We can not think, that under this sixteenth instruction, appellees have had a fair trial, or that justice has been done them, and therefore the judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*